IN THE UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

DEBRA ROSHELLE GLENN           )
                               )
v.                             )    No. 3:15-0079
                               )
CAROLYN W. COLVIN              )
    Acting Commissioner of     )
    Social Security            )

To:   The Honorable Aleta A. Trauger, District Judge

# REPORT AND RECOMMENDATION

Plaintiff filed this action pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3) to obtain judicial review of the final decision of the Social Security Administration ("Commissioner") denying Plaintiff's claim for a period of disability and Disability Insurance Benefits ("DIB"), as provided under Title II of the Social Security Act ("the Act"). The case is currently pending on Plaintiff's motion for judgment on the administrative record (Docket Entry No. 14), to which Defendant has responded (Docket Entry No. 16).

Upon review of the administrative record as a whole and consideration of the parties' filings, the Court recommends that Plaintiff's motion be **DENIED**.

## I. INTRODUCTION

Plaintiff filed an application for SSI on June 30, 2011. *See* Transcript of the Administrative Record (Docket Entry No. 10), at 54-55.[1] She alleged a disability onset date of May 10, 2009, which was later amended to November 9, 2011. AR 30, 54. Plaintiff asserted that she was unable to work due to a psychotic disorder, which included hearing voices and paranoia, as well as major depressive disorder. AR 36, 59, 125.

Plaintiff's applications were denied initially and upon reconsideration. AR 54-55. Pursuant to her request for a hearing before an administrative law judge ("ALJ"), Plaintiff appeared with counsel and testified at a hearing before ALJ Elizabeth Neuhoff on July 19, 2013. AR 24. On August 29, 2013, the ALJ denied the claim. AR 7. On December 31, 2014, the Appeals Council denied Plaintiff's request for review of the ALJ's decision, AR 1-3, thereby making the ALJ's decision the final decision of the Commissioner. This civil action was thereafter timely filed, and the Court has jurisdiction. 42 U.S.C. § 405(g).

## II. THE ALJ FINDINGS

The ALJ issued an unfavorable decision on August 29, 2013. AR 7. Based upon the record, the ALJ made the following enumerated findings:

1. The claimant meets the insured status requirements of the Social Security Act through December 31, 2014.

2. The claimant has not engaged in substantial gainful activity since November 9, 2011, the amended alleged onset (20 CFR 404.1571 *et seq.*).

3. The claimant has the following severe impairment: major depressive disorder (20 CFR 404.1520(c)).

---

[1] The Transcript of the Administrative Record is hereinafter referenced by the abbreviation "AR" followed by the corresponding page number(s). All other filings are hereinafter referenced by the abbreviation "DE" followed by the corresponding docket entry number and page number(s) where appropriate.

>                                    ***
> 4.  The claimant does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1529(d), 404.1525 and 404.156).
>
>                                    ***
> 5.  After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform the full range of work at all exertional levels but with the following nonexertional limitations: she can understand, remember, and perform simple, unskilled work consisting of one-step to two-step tasks and instructions. She can have occasional contact with the general public and can handle work-only related contact with coworkers and supervisors. She can also handle occasional changes in the workplace routine, setting or location.
>
>                                    ***
> 6.  The claimant is able to perform past relevant work (20 CFR 404.1565).
>
>                                    ***
> 7.  The claimant was born on June 1, 1958 and was 53 years old, which is defined as an individual closely approaching advanced age, on the alleged disability onset date (20 CFR 404.1563).
>
> 8.  The claimant has at least a high school education and is able to communicate in English (20 CFR 404. 1564).
>
> 9.  Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is "not disabled," whether or not the claimant has transferable job skills (See SSR 82-41 and 20 CFR Part 404, Subpart P, Appendix 2).
>
> 10. Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the regional and national economy that the claimant can perform (20 CFR 404.1569 and 404.1569(a)).
>
>                                    ***
> 11. The claimant has not been under a disability, as defined in the Social Security Act, from November 9, 2011, through the date of this decision (20 CFR 404.1520(g)).

AR 12-18.

## III. REVIEW OF THE RECORD

The parties and the ALJ have thoroughly summarized and discussed the medical and testimonial evidence of the administrative record. Accordingly, the Court will discuss those matters only to the extent necessary to analyze the parties' arguments.

## IV. DISCUSSION AND CONCLUSIONS OF LAW

### A. Standard of Review

The determination of disability under the Act is an administrative decision. The only questions before this Court upon judicial review are: (i) whether the decision of the Commissioner is supported by substantial evidence, and (ii) whether the Commissioner made legal errors in the process of reaching the decision. 42 U.S.C. § 405(g). *See Richardson v. Perales*, 402 U.S. 389, 401, 91 S. Ct. 1420, 28 L. Ed. 2d 842 (1971) (adopting and defining substantial evidence standard in context of Social Security cases); *Kyle v. Comm'r of Soc. Sec.*, 609 F.3d 847, 854 (6th Cir. 2010). The Commissioner's decision must be affirmed if it is supported by substantial evidence, "even if there is substantial evidence in the record that would have supported an opposite conclusion." *Blakely v. Comm'r of Soc. Sec.,* 581 F.3d 399, 406 (6th Cir. 2009) (quoting *Key v. Callahan*, 109 F.3d 270, 273 (6th Cir. 1997)); *Jones v. Comm'r of Soc. Sec.,* 336 F.3d 469, 477 (6th Cir. 2003); *Her v. Comm'r of Soc. Sec.,* 203 F.3d 388, 389-90 (6th Cir. 1999).

Substantial evidence is defined as "more than a mere scintilla" and "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson*, 402 U.S. at 401 (quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229, 59 S. Ct. 206, 83 L. Ed. 126 (1938)); *Rogers v. Comm'r of Soc. Sec.,* 486 F.3d 234, 241 (6th Cir. 2007); *LeMaster v. Weinberger*, 533 F.2d 337, 339 (6th Cir. 1976) (quoting Sixth Circuit opinions adopting language substantially similar to that in *Richardson*).

4

The Court's review of the Commissioner's decision is limited to the record made in the administrative hearing process. *Jones v. Secretary*, 945 F.2d 1365, 1369 (6th Cir. 1991). A reviewing court may not try the case *de novo*, resolve conflicts in evidence, or decide questions of credibility. *See, e.g., Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984) (citing *Myers v. Richardson*, 471 F.2d 1265, 1268 (6th Cir. 1972)). The Court must accept the ALJ's explicit findings and determination unless the record as a whole is without substantial evidence to support the ALJ's determination. 42 U.S.C. § 405(g). *See, e.g., Houston v. Sec'y of Health & Human Servs.*, 736 F.2d 365, 366 (6th Cir. 1984).

### B. Determining Disability at the Administrative Level

The claimant has the ultimate burden of establishing an entitlement to benefits by proving her "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 432(d)(1)(A). The asserted impairment(s) must be demonstrated by medically acceptable clinical and laboratory diagnostic techniques. *See* 42 U.S.C. §§ 432(d)(3) and 1382c(a)(3)(D); 20 C.F.R. §§ 404.1512(a), (c), and 404.1513(d). "Substantial gainful activity" not only includes previous work performed by the claimant, but also, considering the claimant's age, education, and work experience, any other relevant work that exists in the national economy in significant numbers regardless of whether such work exists in the immediate area in which the claimant lives, or whether a specific job vacancy exists, or whether the claimant would be hired if she applied. 42 U.S.C. § 423(d)(2)(A).

In the proceedings before the Social Security Administration, the Commissioner must employ a five-step, sequential evaluation process in considering the issue of the claimant's alleged disability. *See Heston v. Comm'r of Soc. Sec.*, 245 F.3d 528, 534 (6th Cir. 2001); *Abbot v. Sullivan*, 905 F.2d 918, 923 (6th Cir. 1990). First, the claimant must show that she is not engaged in "substantial

5

gainful activity" at the time disability benefits are sought. *Cruse v. Comm'r of Soc. Sec.*, 502 F.3d 532, 539 (6th Cir. 2007); 20 C.F.R. §§ 404.1520(b), 416.920(b). Second, the claimant must show that she suffers from a severe impairment that meets the twelve month durational requirement. 20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii). *See also Edwards v. Comm'r of Soc. Sec.*, 113 F. App'x 83, 85 (6th Cir. 2004). Third, if the claimant has satisfied the first two steps, the claimant is presumed disabled without further inquiry, regardless of age, education or work experience, if the impairment at issue either appears on the regulatory list of impairments that are sufficiently severe as to prevent any gainful employment or equals a listed impairment. *Combs v. Comm'r of Soc. Sec.*, 459 F.3d 640, 643 (6th Cir. 2006); 20 C.F.R. §§ 404.1520(d), 416.920(d). A claimant is not required to show the existence of a listed impairment in order to be found disabled, but such showing results in an automatic finding of disability that ends the inquiry. *See Combs, supra; Blankenship v. Bowen*, 874 F.2d 1116, 1122 (6th Cir. 1989).

If the claimant's impairment does not render her presumptively disabled, the fourth step evaluates the claimant's residual functional capacity in relationship to her past relevant work. *Combs, supra.* "Residual functional capacity" ("RFC") is defined as "the most [the claimant] can still do despite [her] limitations." 20 C.F.R. §§ 404.1545(a)(1). In determining a claimant's RFC, for purposes of the analysis required at steps four and five, the ALJ is required to consider the combined effect of all the claimant's impairments, mental and physical, exertional and nonexertional, severe and nonsevere. *See* 42 U.S.C. §§ 423(d)(2)(B), (5)(B); *Foster v. Bowen*, 853 F.2d 483, 490 (6th Cir. 1988). At the fourth step, the claimant has the burden of proving an inability to perform past relevant work or proving that a particular past job should not be considered relevant. *Cruse*, 502 F.3d at 539; *Jones*, 336 F.3d at 474. If the claimant cannot satisfy the burden at the fourth step, disability benefits must be denied because the claimant is not disabled. *Combs*, *supra*.

If a claimant is not presumed disabled but shows that past relevant work cannot be performed, the burden of production shifts at step five to the Commissioner to show that the claimant, in light of the claimant's RFC, age, education, and work experience, can perform other substantial gainful employment and that such employment exists in significant numbers in the national economy. *Longworth v. Comm'r of Soc. Sec.*, 402 F.3d 591, 595 (6th Cir. 2005) (quoting *Walters v. Comm'r of Soc. Sec.*, 402 F.3d 525, 529 (6th Cir. 1997)). *See also Felisky v. Bowen*, 35 F.3d 1027, 1035 (6th Cir. 1994). To rebut a *prima facie* case, the Commissioner must come forward with proof of the existence of other jobs a claimant can perform. *Longworth*, 402 F.3d at 595. *See also Kirk v. Sec'y of Health & Human Servs.*, 667 F.2d 524, 528 (6th Cir. 1981), *cert. denied*, 461 U.S. 957, 103 S. Ct. 2428. 77 L. Ed. 2d 1315 (1983) (upholding the validity of the medical-vocational guidelines grid as a means for the Commissioner of carrying his burden under appropriate circumstances). Even if the claimant's impairments prevent the claimant from doing past relevant work, if other work exists in significant numbers in the national economy that the claimant can perform, the claimant is not disabled. *Rabbers v. Comm'r of Soc. Sec.*, 582 F.3d 647, 652 (6th Cir. 2009). *See also Tyra v. Sec'y of Health & Human Servs.*, 896 F.2d 1024, 1028-29 (6th Cir. 1990); *Farris v. Sec'y of Health & Human Servs.*, 773 F.2d 85, 88-89 (6th Cir. 1985); *Mowery v. Heckler*, 771 F.2d 966, 969-70 (6th Cir. 1985).

If the question of disability can be resolved at any point in the sequential evaluation process, the claim is not reviewed further. 20 C.F.R. § 404.1520(a)(4). *See also Higgs v. Bowen*, 880 F.2d 860, 863 (6th Cir. 1988) (holding that resolution of a claim at step two of the evaluative process is appropriate in some circumstances).

**C. The ALJ's Five -Step Evaluation of Plaintiff**

In the instant case, the ALJ resolved Plaintiff's claim at step five of the five-step process. The ALJ found that Plaintiff met the first two steps, AR 12, but found at step three that Plaintiff was not

7

presumptively disabled because she did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. AR 12-13. At step four, the ALJ found that Plaintiff is able to perform past relevant work, but elected to proceed to step five "[d]ue to the lack of consistency and information about what duties each specific warehouse job entailed." AR 16-17. At step five, the ALJ found that Plaintiff's residual functional capacity ("RFC") allowed her to perform a full range of work at all exertional levels with some nonexertional limitations, and that considering her age, education, work experience, and RFC, there are jobs that exist in significant numbers in the regional and national economy that Plaintiff can perform. AR 17.

### D. Plaintiff's Assertions of Error

Plaintiff argues that the ALJ erred by (1) not supporting the credibility findings and conclusions with substantial evidence, and by (2) failing to provide good reasons for rejecting the opinions of Plaintiff's treating mental health professionals. DE 15 at 1. Plaintiff therefore requests that the Court enter an order reversing the Commissioner's decision and awarding benefits to Plaintiff, or alternatively, that this case be remanded pursuant to sentence four of 42 U.S.C. § 405(g) for further consideration by a new ALJ. *Id.* at 14.

Sentence four of 42 U.S.C. § 405(g) states the following:

> The court shall have power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing.

42 U.S.C. § 405(g), 1383(c)(3). "In cases where there is an adequate record, the [Commissioner's] decision denying benefits can be reversed and benefits awarded if the decision is clearly erroneous, proof of disability is overwhelming, or proof of disability is strong and evidence to the contrary is lacking." *Mowery v. Heckler*, 771 F.2d 966, 973 (6th Cir. 1985). Furthermore, a court can reverse the decision and immediately award benefits if all essential factual issues have been resolved and the record

adequately establishes a claimant's entitlement to benefits. *Faucher v. Secretary*, 17 F.3d 171, 176 (6th Cir. 1994). *See also Newkirk v. Shalala*, 25 F.3d 316, 318 (1994).

**1. The ALJ's credibility findings.**

Plaintiff contends that the ALJ's credibility findings were not supported by substantial evidence. Plaintiff argues that the severe impairment determined by the ALJ should have been "bipolar I disorder, mixed with psychotic features," instead of major depressive disorder. DE 15 at 9. Plaintiff also claims that the ALJ "cherry-picked" three visits over a four-month time span to support her determination that Plaintiff does not experience hallucinations, paranoia, and other psychotic features, despite Plaintiff's complaints of "sporadic" hallucinations and paranoia around others. *Id.* at 11. Plaintiff argues that the ALJ placed too much emphasis on Plaintiff's activities of grocery shopping once a month, dish washing, going to church, and visiting family, as support of Plaintiff's ability to engage in substantial gainful activity. *Id*. at 10-11. Plaintiff argues that the listed examples represent only intermittent activity and do not demonstrate an ability to engage in substantial gainful activity. *Id*. Plaintiff further asserts that the ALJ's credibility analysis was improper and in violation of SSR 96-7p because the ALJ failed to "acknowledge the entire record." *Id.* at 11.

In response, Defendant argues that Plaintiff's diagnosis was never amended from major depressive disorder to bipolar disorder with psychotic features, and that Plaintiff's primary diagnosis has consistently remained major depressive disorder. DE 16 at 9-10. Defendant highlights medical evidence that depression was the primary diagnosis by Plaintiff's treating professionals. *Id*. Defendant also notes that Plaintiff fails to explain how the analysis would have differed if the ALJ had found that Plaintiff had bipolar disorder instead of major depressive disorder. *Id*. at 10.

An ALJ's findings as to a claimant's credibility are entitled to deference because of the ALJ's unique opportunity to observe the claimant and judge her subjective complaints. *Buxton v. Halter*, 246 F.3d 762, 773 (6th Cir. 2001). As noted *supra*, SSR 96-7p requires that the ALJ's explanation of her credibility finding be "sufficiently specific to make clear to the individual and to any subsequent reviewers the weight the adjudicator gave to the individual's statements and the reasons for that weight." As such, "blanket assertions that the claimant is not believable will not pass muster, nor will explanations as to credibility which are not consistent with the entire record and the weight of the relevant evidence." *Rogers*, 486 F.3d at 248.

In the instant case, Plaintiff claims that the ALJ misstated the record by finding that Plaintiff "stayed in her house all day where she was safe." AR 15. Plaintiff then proceeds to cite Sixth Circuit case law, which holds that a claimant's ability to "perform simple functions, such as driving, grocery shopping, dish washing and floor sweeping, does not necessarily indicate that [the claimant] possesses an ability to engage in substantial gainful activity." *Walston v. Gardner*, 381 F.2d 580, 586 (6th Cir. 1967). While this cited case law is certainly valid, it is not relevant to the ALJ's analysis of Plaintiff's credibility. The ALJ cited Plaintiff's various social endeavors, which included going to church, visiting family, and getting her hair and nails done, to demonstrate the contradiction between such activities and Plaintiff's claim that she experiences "difficulty interacting with others[.]" AR 15. Defendant correctly points out that consideration of such activities was proper in determining whether Plaintiff's testimony was credible. *See Temples v. Comm'r of Soc. Sec.*, 515 F. App'x 460, 462 (6th Cir. 2013).

The Court notes that the record referenced by the ALJ is an office note from Mental Health Cooperative ("MHC"), which states the following: "[Plaintiff] avoids social interaction [due to] paranoia. [Plaintiff] spends most of her time in the house. [Plaintiff] stated 'I feel safe there.'" AR 198.

The ALJ's statement thus appears to represent a reasonable interpretation of Plaintiff's remarks, especially in light of Plaintiff's testimony during her hearing:

> Counsel: Now at one point you said that you spend most of your time in your house because you feel safer there. Tell us what you mean by that.
>
> Plaintiff: I do. I don't go anywhere unless my son, he comes to visit like every other weekend . . . I have grandkids. I visit them, and that's about it. He takes me to the store to do the shopping for personal stuff.

AR 45-46. The ALJ's assessment was clearly not intended to demonstrate that Plaintiff was lying by claiming that she always stayed in her house. The ALJ instead presented Plaintiff's statement that she stayed in her house all day "where she was safe" to demonstrate the contradiction between Plaintiff's alleged fear of social interaction and her various social engagements.

The record contains evidence of such social engagements. Plaintiff stated during an appointment with MHC just three months before her hearing that she "used to not even get out of the house or care for self and now I walk, my son makes sure that I don't look like a slob and pays for me to get my hair and nails done." AR 222. This suggests improvement in Plaintiff's alleged social phobia, which is supported by her additional statement that she "noticed improvement in her mental state" due to her medication. AR 222. Plaintiff again reported getting her nails and hair done shortly before her hearing, AR 225, 254, and testified during her hearing that she attended church twice per month. AR 37-38. The ALJ discussed these activities in her opinion. AR 15. The ALJ further discussed Dr. Randall May's examination of Plaintiff, in which Dr. May found that she "did not . . . put forth [her] best effort in the mental status exam, which raises questions about the veracity of her other statements." AR 14, 174. Dr. May also suspected symptom magnification by Plaintiff during the examination. AR 176.

Despite the foregoing evidence, Plaintiff maintains that there are "no concrete reasons to attack her credibility." DE 15 at 11. However, as discussed by the ALJ, Plaintiff also denied using cocaine during a November 16, 2011 appointment at MHC, despite testing positive for cocaine the week before. AR 14, 199-200. She blamed this positive drug screen on a "cigarette someone gave [her]" that may have been "laced," AR 200, even though she reported that she did not smoke cigarettes just one month earlier. AR 175. She again tested positive for cocaine a year later on November 7, 2012. AR 233. The ALJ also discussed Plaintiff's appointment at MHC in June of 2013, in which nurse practitioner Windle Morgan noted that Plaintiff demonstrated no signs of psychosis, notwithstanding her claim that she was still hearing and seeing things. AR 15, 250. Despite Plaintiff's contention otherwise, the Court finds that there is substantial and concrete evidence to support the ALJ's decision to discount her credibility.

An ALJ's credibility findings are "virtually 'unchallengeable.'" *Ritchie v. Comm'r of Soc. Sec.*, 540 F. App'x 508, 511 (6th Cir. 2013) (citing *Payne v. Comm'r of Soc. Sec.*, 402 F. App'x 109, 112-13 (6th Cir. 2010)). If an ALJ cites substantial and legitimate evidence to support her factual conclusions, the Court should not second-guess such findings: "If the ALJ's decision is supported by substantial evidence, then reversal would not be warranted even if substantial evidence would support the opposite conclusion." *Ulman v. Comm'r of Soc. Sec.*, 693 F.3d 709, 714 (6th Cir. 2012) (citing *Bass v. McMahon*, 499 F.3d 506, 509 (6th Cir. 2007)). In the instant case, the ALJ's finding regarding Plaintiff's credibility is supported by numerous notations in the record. The Court therefore rejects Plaintiff's argument.

**2. The ALJ's consideration of Plaintiff's treating mental health professionals.**

Plaintiff next argues that the ALJ failed to provide good reasons for rejecting the opinions of the Plaintiff's treating mental health professionals. Specifically, Plaintiff claims that the ALJ failed to properly consider a letter written by Julie Malone, a licensed mental health counselor, and a medical source statement completed by Windle Morgan, a nurse practitioner. DE 15 at 13. Plaintiff quotes 20 C.F.R. § 404.1527(c)(2)[2] in arguing that the ALJ must provide "good reasons" for the weight given to the treating source's opinion. *Id*. at 12. Plaintiff finally asserts that the RFC assigned by the ALJ was not supported by any other health professional. *Id*. at 14.

As an initial matter, mental health counselors and nurse practitioners fall into the category of "other sources" which are not considered "acceptable medical sources" as defined by the Act. *See Cruse*, 502 F.3d at 541 (6th Cir. 2007). Opinions from such "other sources" are not entitled to any special deference. *Hill v. Comm'r of Soc. Sec.*, 560 F. App'x 547, 550 (6th Cir. 2014). Pursuant to 20 C.F.R. § 404.1513(d), a claimant may nevertheless introduce evidence from such other sources in order to "show the severity of [the claimant's] impairment(s) and how it affects [the claimant's] ability to work." Additionally, SSR 06–03p provides that:

> [s]ince there is a requirement to consider all relevant evidence in an individual's case record, the case record should reflect the consideration of opinions from medical sources who are not "acceptable medical sources" and from "non-medical sources" who have seen the claimant in their professional capacity. *Although there is a distinction between what an adjudicator must consider and what the adjudicator must explain in the disability determination or decision,* the adjudicator generally should explain the weight given to opinions from these "other sources*,"* or otherwise ensure that the discussion of the evidence in the determination or decision allows a claimant or subsequent reviewer to follow the adjudicator's reasoning, when such opinions may have an effect on the outcome of the case.

---

[2] Plaintiff incorrectly lists 20 C.F.R. § 404.1527(d)(2).

(emphasis added). Plaintiff's reliance on 20 C.F.R. § 404.1527(c)(2) is therefore misplaced.

Nevertheless, the Court must consider whether the ALJ properly considered the opinions provided by Ms. Malone and Mr. Morgan. The ALJ stated the following with respect to a letter that Ms. Malone wrote in response to a request from counsel for Plaintiff for an opinion regarding her alleged disabilities:

> Ms. Malone indicated that [Plaintiff] could not work a normal workday due to mental impairments compounded by health issues, but she did not give any details or support to her conclusion, in particular the allegation that health issues were compounding her mental impairments. In fact, [Plaintiff's] attorney stated on the record that [Plaintiff] was not alleging any physical impairments. Given the lack of supporting documentation in this opinion and the inconsistencies with the evidence of record, the undersigned gives little weight to this opinion.

AR 16. Plaintiff claims that the ALJ's rationale "stretches reasonableness." DE 15 at 13. Plaintiff also argues that the ALJ unfairly discounted Ms. Malone's opinion based on her reference to Plaintiff's health issues. AR 219. The sentence in question from Ms. Malone states that, "it is my belief that [Plaintiff] could not be reasonably expected to work a normal work day due to her mental impairments which seem to be compounded by health issues." AR 219. Despite Plaintiff's attempt to minimize the relevance of this reference to her physical condition, the Court finds it significant. Ms. Malone states in her letter, dated March 5, 2013, that during her therapy sessions Plaintiff "complains of depression, anxiety, insomnia, anhedonia, and *physical pain*," the latter of which she believed was compounding Plaintiff's mental issues. AR 219 (emphasis added). Just one week later, however, Plaintiff reported no physical health issues. AR 225. She similarly reported no physical issues during an appointment at MHC on May 7, 2013. AR 221. Furthermore, as noted by the ALJ, Plaintiff did not allege any physical impairments, even after the ALJ inquired as to any physical conditions during the hearing in July of 2013. AR 36.

Additionally, the Court notes that the ALJ's opinion regarding a lack of support for Ms. Malone's opinion was not limited to Plaintiff's alleged physical health issues. The ALJ simply emphasized the lack of support for Ms. Malone's opinion regarding Plaintiff's physical issues. AR 16. This is significant, as Ms. Malone had only seen Plaintiff on two occasions at the time she wrote her letter. AR 219, 255, 257. Even if Ms. Malone was an acceptable treating source, which is not the case, 20 C.F.R. § 404.1527(c)(2)(i) clearly holds that more weight is given to a source who "has seen [the claimant] a number of times and long enough to have obtained a longitudinal picture of [the claimant's] impairment." The ALJ noted this dearth of therapy sessions in her opinion. AR 15. Ms. Malone's letter also does little more than describe bipolar disorder and list Plaintiff's complaints. AR 219. As such, the ALJ's decision to discount Ms. Malone's opinion based on a lack of supporting documentation and inconsistencies in the evidence is supported by substantial evidence.

With respect to medical source opinion provided by Mr. Morgan, the ALJ stated the following:

> Nurse Morgan opined that [Plaintiff] had marked limitations in understanding, remembering, and carrying out simple instructions, and extreme limitations on [sic] understanding, remembering, and carrying out complex instructions. The statement contradicts [Plaintiff's] testimony and multiple statements that [Plaintiff] made to her medical providers, saying that she lives independently, gets her hair and nails done[,] cared for her sister, goes to church, shops twice a month[,] reads books, and does puzzles. Given this discrepancy, the undersigned gives [his] opinion little weight.

AR 16. Plaintiff appears to recognize that this opinion is well supported by evidence in the record and does not challenge the ALJ's findings regarding the contradictions in her statements made to her medical providers and during the hearing. Instead, Plaintiff claims that the ALJ erred by failing to provide "good reasons" for rejecting Mr. Morgan's opinion regarding Plaintiff's ability to interact with the public, supervisors, and co-workers. DE 15 at 13. As noted *supra*, however, SSR 06-03p does not require that the ALJ provide "good reasons" for discounting the opinion of a non-acceptable medical

source. Additionally, the ALJ can consider all of the evidence without directly addressing in her written decision every piece of evidence submitted by a party. *Kornecky v. Comm'r of Soc. Sec.*, 167 F. App'x 496, 507-08 (6th Cir. 2006) (internal citation omitted). Furthermore, Mr. Morgan's opinion that Plaintiff has "marked" limitations in her ability to interact with supervisors and co-workers is contradicted by Plaintiff's own testimony:

> ALJ: [I]t looks like the last job you had . . . you left because of downsizing. Does that sound right?
>
> Plaintiff: Yes.
>
> ALJ: [H]ad you not been laid off for downsizing would you have stayed at that job?
>
> Plaintiff: Probably not.
>
> ALJ: [W]hy not?
>
> Plaintiff: I didn't like it very well.
>
> ALJ: [I]s it just the people that you worked with, or was it the job?
>
> Plaintiff: It was the people.
>
> ALJ: [H]ad it been other people . . . would you have kept that job?
>
> Plaintiff: Probably, yes.

AR 34. Mr. Morgan's opinion is also contradicted by Dr. May's assessment that Plaintiff's ability to work with the public is mildly to moderately limited, and Dr. Brad Williams's opinion that Plaintiff had only mild difficulties in maintaining social functioning.[3] AR 177, 188, 215. The Court thus finds ample

---

[3] Dr. Williams affirmed the opinion of Dr. Keith Bauer, who found that Plaintiff had mild restrictions in maintaining social functioning. AR 188.

evidence in the record to support the ALJ's decision to discount the opinions of Ms. Malone and Mr. Morgan.

Finally, Plaintiff asserts that the ALJ's assigned RFC demonstrates that she improperly "stepped in the shoes of other trained mental health professionals and determined she knew better." DE 15 at 14. Plaintiff does not cite any rule in support of this allegation, but instead asks the Court to remand "for clarification of this matter." *Id*. The Court finds this argument to be without merit.

The RFC in this case is identical to the first hypothetical posed by the ALJ to the vocational expert during Plaintiff's hearing. AR 13-14, 48. An ALJ is permitted to "present a hypothetical to the [vocational expert] on the basis of [her] own assessment if [she] reasonably deems the claimant's testimony to be inaccurate." *Bartyzel v. Comm'r of Soc. Sec.*, 74 F. App'x 515, 524 (6th Cir. 2003) (quoting *Jones*, 336 F.3d at 476). Furthermore, the ALJ is "required to incorporate only those limitations accepted as credible by the finder of fact." *Id*. (quoting *Casey v. Sec'y of Health & Human Servs.*, 987 F.2d 1230, 1235 (6th Cir. 1993)). The ALJ did not find Plaintiff to be entirely credible, AR 15, nor did she find any of the limitations recommended by Ms. Malone or Mr. Morgan to be credible, AR 16, all of which the Court finds to be supported by substantial evidence. The ALJ was therefore not required to include such limitations into her RFC determination. *Irvin v. Soc. Sec. Admin.*, 573 F. App'x 498, 502 (6th Cir. 2014). The Court also notes that no treating physician has provided any functional limitations with respect to Plaintiff's alleged impairment. It is Plaintiff's burden to demonstrate that she suffers from an impairment that entitles her to benefits, 42 U.S.C. § 432(d)(1)(A), which she has failed to do. Plaintiff accuses the ALJ of "playing doctor," DE 15 at 14, despite the fact that she has provided no opinion regarding her alleged impairments from an acceptable medical source. Regardless, it is the role of the ALJ, and not a physician, to determine a claimant's RFC. *Coldiron v.*

17

*Comm'r of Soc. Sec.*, 391 F. App'x 435, 439 (6th Cir. 2010) (citing 42 U.S.C. § 432(d)(5)(B)). Based on these factors, the Court finds no error in the ALJ's assigned RFC.

## V. RECOMMENDATION

For the above stated reasons, it is recommended the Plaintiff's motion for judgment on the administrative record (DE 14) be DENIED and the Commissioner's decision be affirmed.

ANY OBJECTIONS to this Report and Recommendation must be filed with the Clerk of Court within fourteen (14) days of service of this Report and Recommendation and must state with particularity the specific portions of this Report and Recommendation to which objection is made. Failure to file written objections within the specified time can be deemed a waiver of the right to appeal the District Court's Order regarding the Report and Recommendation. *See Thomas v. Arn*, 474 U.S. 140, 106 S.Ct. 466, 88 L.Ed.2d 435 (1985); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).

Respectfully Submitted,

BARBARA D. HOLMES
United States Magistrate Judge